INZER, Justice:
This is an eminent domain case. It came to this Court on an appeal by the Mississippi State Highway Commission from a judgment of the Circuit Court of Lincoln County, wherein the court awarded appel-lees, Virgil Magee and his wife Maude Magee, damages in the amount of $14,000 for the taking of 18.76 acres of land for highway purposes.
Appellees were the owners of 40 acres of land in Lincoln County, described as the Southwest Quarter of the Southwest Quarter of Section 26, Township 6 North, Range 7 East. The Mississippi State Highway Commission, hereinafter referred to as Commission, filed a petition to condemn a total of 18.76 acres of the above-described land for the construction of Interstate Highway No. 55. The right-of-way consists of 12.39 acres for the highway, and the remainder for a frontage road and drainage easements. The highway will traverse the land in a north-south direction along the west boundary, leaving a narrow strip consisting of 2.05 acres on the west side. Appellees will have no access to this land. There are also two small tracts which will be left between the frontage road and the highway, one at the north end of the property, and one at the south end. The total acreage in these two tracts is .32 acres, and they will be rendered practically useless to the landowner. The land taken and that left without access amounts to about 21 acres. The property had been used by the landowners as a tenant farm for many years prior to the condemnation. In addition, there were an old four-room tenant house constructed of rough lumber and in a poor state of repair, and two small outhouses and a shed located on the property taken. The property was fenced and about one-fourth of the fencing was taken. *200 iThe property is located about two miles northwest of Bogue Chitto and about nine miles from Brookhaven. It is on a graveled road which has now been closed, but a frontage road will be constructed to give access to the remaining land. This frontage road connects with a blacktopped road at a point about 500 feet south of the property.
The appellant assigns as error on the part of the trial court the following:
1. The Court erred in permitting the jury to view the premises.
2. The verdict is without any competent evidence to support it, or alternatively the verdict is without the support of any reasonably believable proof.
3. The verdict of the jury was so grossly excessive as to denote bias, prejudice and passion and as to shock the enlightened conscience of this Court requiring a reversal of the judgment below.
The record reflects that at the beginning of the trial, appellees made a motion for the court to allow the jury to view the premises. Appellant resisted this motion and introduced testimony to show that the property had already been taken by the Commission, and at the time of the trial, it had been cleared and some preliminary construction work started. After considering the testimony, the trial court sustained the motion. It was the contention of appellant that a view of the premises by the jury in circuit court is controlled by Mississippi Code Annotated section 1800 (1956). It cited many decisions of this Court to illustrate that the trial court was in error in allowing the jury to view the premises under the facts and circumstances of this case. None of the cases cited are eminent domain cases, except the case of Mississippi State Highway Commission v. Williamson, 227 Miss. 580, 86 So.2d 670 (1956), wherein this Court held that the trial court was not in error in allowing the jury to view the premises. In Williamson, supra, it was erroneously stated that the motion was controlled by Mississippi Code Annotated section 1800 (1956). Proceedings in eminent domain cases are controlled by Mississippi Code Annotated sections 2749-2782 (1956). Section 2770 provides:
Either party to the suit, on application to the court, shall be entitled to have the jury view the property sought to be condemned and its surrounding under the supervision of the judge; or, the judge on his own initiative may so order.
In Rasberry v. Calhoun County, 230 Miss. 858, 94 So.2d 612 (1957), one of the errors assigned was that the trial court was in error in allowing the jury to view the premises in an eminent domain case. In passing on this assignment, the Court said:
* * * Moreover, Code Section 2770, in the chapter on eminent domain, specifically provides, ‘Either party to the suit, on application to the court, shall be entitled to have the jury view the property sought to be condemned and its surroundings under the supervision of the judge’. This Act gives the party in an eminent domain proceeding a right to have a jury view, in the absence of unusual conditions which in the sound judgment of the trial court would eliminate the value of such a view, and those do not exist here. (230 Miss. at 864, 94 So. 2d at 614)
This case is controlled by the above decision, and we do not think that the action of the trial court in allowing the jury to view the premises in this case was an abuse of its discretion. Therefore, its action in this regard was not error.
We will consider the next two assignments of error together, for the reason that we are of the opinion that the verdict and judgment of $14,000 is not supported by the evidence in this case. It is excessive and contrary to the overwhelming weight of the evidence. The Commission offered two witnesses who testified as to values in this case. Mr. C. B. Moore, a veteran appraiser for the Commission, testified that *201 the fair market value of the entire 40 acres prior to the taking was $6,675. He placed a value of $950 on the remaining land, making a total damage of $5,975. He valued all improvements including fencing at $1,-885. The other witness, Mr. O. H. Hartman, Jr., who lives in Brookhaven and has been in the real estate business for twenty years and was familiar with the farms and farmland in Lincoln County, testified that the fair market value of the property prior to the taking was $5,462, and that the fair market value of the land remaining was $1,150, making a total damage of $4,312. A valuation of $2,562 for all improvements was included in the estimate.
The only testimony that could possibly support a judgment for as much as $14,000 was the testimony of appellee, Virgil Ma-gee. He did not testify that he was familiar with the market value of property in this area, but did testify that he was familiar with sales of comparable land in the area. He said that the value of his property prior to the taking was $15,250, and the value of the remaining property after the taking was $950, making a total of $14,-300 in damages. In arriving at his overall value, he placed a value of $300 per acre on 25 acres of his land, and a value of $250 an acre on the other 15 acres. He valued the improvements at $4,000. This was his estimate of what it would take to replace the improvements without regard to depreciation. On cross-examination he admitted that no land in this area had ever sold for as much as $300 per acre. It is also clear from his testimony that the value he placed on his property was not the fair market value of it, but what, in his opinion, the land was worth to him, or the amount he wanted for it. When his testimony is considered in its strongest light, it is not sufficient to support the amount of the judgment in this case. The other witness who testified on behalf of appellees was Mr. C. D. Calhoun, Manager of the Brookhaven Production Credit Association, who had experience in appraising property for loan purposes, and was familiar with the value of land in this area. He testified that the fair market value of the entire property prior to the taking was $14,000. When asked how he arrived at this figure, he said, “Give you a breakdown as a matter of my opinion, the improvements I listed $5,000.00. That was the house, the outbuildings, the fence and other improvements that might be attached to the property. I broke down the 15 acres of the lower bottom land which I explained awhile ago at $250.00 an acre which makes a total of $3750.00. The upland which is 25 acres remaining which is $150.00 which will make $3750.00, and I had timber estimate of $1,000.00 for a total of $14,000.00.” When these figures are totaled, they only add up to $13,500, which, in his opinion, was the fair market value of the entire property before the taking. He estimated the fair market value of the remaining land after the taking at $1,200, leaving a damage of $12,300. On cross-examination when questioned relative to his figure of $5,000 for improvements, he said that included in this figure was $1,000 for fencing. He admitted that only one-fourth of this fence would be taken or damaged. This in effect reduced his estimate of the total damage to $11,550. He estimated the value of the house, two small outhouses and the well at $4,000, and this figure seems to have been based on his idea of what it would take to replace the improvements without regard to depreciation. However, he did not know the size of the house and had difficulty in recognizing the house from the pictures that were in evidence.
After carefully considering all the evidence in this case, we are of the opinion that it does not support a judgment for as much as $14,000, and that the judgment for this amount is against the overwhelming weight of the evidence. However, we are of the opinion that the evidence is sufficient to support a judgment of $10,000, and in order to dispose of this case, the judgment of the circuit court will be affirmed if the appellees will agree to a re-mittitur of $4,000 within ten days after the judgment of this Court becomes final. *202 Otherwise, the case will be reversed and remanded for a new trial.
Affirmed on condition .of remittitur; otherwise, reversed and remanded.
GILLESPIE, P. J., and RODGERS, BRADY and SMITH, JJ., concur.